OPINION OF THE COURT
Donald J. Sullivan, J.
The defendant orally moves to recuse Assisant District *147 Attorney Mary Beth Abbate from presenting the People’s summation to the jury. It is the defendant’s contention that inasmuch as the said Assistant District Attorney participated in and obtained the defendant’s video tape statement, permitting her to sum up to the jury would seriously prejudice his rights to a fair trial. The People argue in substance that disqualifying Assistant District Attorney Abbate from summing up to the jury would be a hardship in that she has prepared the case from the inception and is thoroughly familiar with the matter. The People further allege that the video tape confession was taken by her in the presence of at least three other witnesses who testified at the trial, thereby dissipating any possible taint that may result by her summation. It is also the position of the People that she would not be vouching for the voluntariness of the defendant’s statements as the entire scenario was seen and heard by the jury via video tape playback.
To set the case in the proper perspective, a brief statement of the facts leading to the instant motion would be helpful. Under the recently enacted juvenile offender law, Luis Bonilla, a 13-year-old defendant, was indicted on November 8, 1978 with an adult codefendant for, inter alia, the crime of murder in the second degree, pursuant to section 125.25 of the Penal Law. In the course of the investigation, the defendant furnished a statement to Assistant District Attorney Abbate, which was transcribed on video tape by the District Attorney’s office with the consent of the defendant. Present with the Assistant District Attorney during the video taping of the defendant’s statement were at least three other witnesses. On or about February 8, 1979, the court denied a motion to suppress the defendant’s statement. During the course of the trial, conducted by Assistant District Attorney Abbate and cocounsel Assistant District Attorney Robert Johnston, the issue as to the voluntariness of the statement was strenuously contested by defense counsel. The video tape, which was displayed to the jury (and parenthetically, replayed on several occasions at its request during its deliberations), unmistakably showed Mrs. Abbate during the question and answer of the defendant. Her voice, distinctive, was clearly heard by the jury. Unquestionably they were aware that the same attorney who took defendant’s statement during the video taping was one of the same persons who was prosecuting the case on behalf of the People.
*148 This case graphically demonstrates the technological progress confronting the judicial system. The consensual video taping of a defendant’s statement, admission, confession and/ or declaration has now been accepted as a proper investigatory tool by law enforcement officials. As demonstrative evidence, it is readily admissible at trial (see CPLR 3113, subd [b], eff Sept. 1, 1977; Fed Rules Civ Pro, rule 30, subd [b], par [4]; subd [c] [US Code, tit 28, Appendix]; People v Higgins, 89 Misc 2d 913). Juxtaposed with this progress are problems which have arisen. Prior thereto, statements once taken from an accused remained strictly an impersonal event. The circumstances under which the statements were previously taken, that is, prevideo tape, were usually subject to oral confirmation. But now we are confronted with in-person "live” verification of the attendant circumstances surrounding the taking of the statements. Here, in addition to oral testimony, a pictorial coverage is available of the manner in which defendant’s statement was procured. The critical question for a court’s determination is now whether a lawyer (or prosecuting attorney) involved in the prosecution of a trial may appear as a witness in that trial but whether the litigation could be conducted in fairness, to all, with all parties properly represented if the attorney testifies or his or her activities are documented by video tape proceedings (see Wolk v Wolk, 70 Misc 2d 620).
Essentially, the relief sought by defendant is grounded in the principles in canon 5 of the Code of Professional Responsibility (hereafter referred to as Code) promulgated by the American Bar Association and adopted by New York State Bar Association, effective January 1, 1970 (McKinney’s Judiciary Law, Book 29, Appendix). Enactment of the guideliness in canon 5 was to "ensure fairness to all who bring their cause to the judiciary for resolution” (Greenebaum-Mountain Mtge. Co. v Pioneer Nat. Title Ins. Co., 421 F Supp 1348, 1351). Disciplinary rule 5-102 of the Code entitled "Withdrawal as Counsel when the Lawyer Becomes a Witness” provides: "(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circum *149 stances enumerated in DR 5-101 (B) (1) through (4).” There are four exceptions designated in subdivision (B) of DR 5-101, namely:
"(1) If the testimony will relate solely to an uncontested matter.
"(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.
"(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.
"(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.”
There has been formulated no inexorable rule for the disqualification of a lawyer (or prosecuting attorney) who acts in the dual capacity as advocate and witness, potential witness or "unsworn” witness. It is a well-settled general principle of law that a lawyer or prosecuting attorney is a competent witness (People v Stokley, 266 Cal App 2d 930, cert den 395 US 914). But whether counsel should be allowed to act both as a prosecutor and witness or "unsworn” witness is a crucial question to be decided by this court. Such determination is a matter addressed to the sound discretion of the trial court (People v Knox, 90 Ill App 2d 149, 3 111 App 3d 22, cert den 409 US 1075). The legitimate investigatory taking by the trial prosecutor, Mrs. Abbate, of the defendant’s confession, albeit by video tape documentation may, standing alone, not be sufficient to disqualify her from her advocacy role. Remedial action would be appropriate in those cases where the cumulative effect of the continued participation of counsel in a dual role as advocate and "unsworn” witness impairs the administration of the criminal justice system. It will not meet the test of fairness to argue that the Assistant District Attorney has not actually been called to testify on the stand. While the rules of the Code refer to "testimony”, interpretation thereof should be broadened to include not only the literal meaning of "testimony” of an attorney but his or her direct or indirect participation in the events being litigated. Although Mrs. Abbate did not actually take the stand, her appearance, voice and conduct as viewed in the video tape is tantamount to testifying (under oath). Her observations as to the defendant’s demeanor and appearance at the time the video tape state- *150 merits were taken from the defendant are relevant on the issue of voluntariness. Since the guilt or innocence of the defendant rested substantially on circumstantial evidence, his statements, admissions, confessions and/or declarations were pivotal issues in the case. It cannot be seriously denied that the effect of the prosecutor’s summation would be to vouch for the veracity of herself insofar as it relates to her participation in the obtaining of defendant’s confession. Immeasurable difficulty in the minds of the jury would be created, consciously or otherwise by the prosecutor’s comments on her own conduct.
The courts have uniformly disapproved the practice of the prosecuting attorney’s injecting into the trial and in summation his or her unsworn assertions of fact (People v Malkin, 250 NY 185). The question of credibility is a function of the trier of the facts. One of the prophylactic means afforded the trier of the facts in determining the credibility of oral evidence is the "opportunity of observing the demeanor of witnesses while they are testifying” (65 NY Jur, Witnesses, § 88, p 251). The appearance, attitude and demeanor of a testifying witness are matters to be taken into consideration in testing a witness’ veracity and determining the weight to be accorded his or her testimony (Matter of Nowakowski, 284 App Div 655, upon rearg affd 1 AD2d 250, affd 2 NY2d 618; People v Carter, 37 NY2d 234). Observation often accords the most accurate method of ascertaining the truth (People v Carter, supra). With these principles in mind, the propriety of a prosecuting attorney’s testifying as a witness or being in a position to comment on his active participation in relevant events of the case is brought sharply into focus. Disciplinary rule 5-102 was designed to avoid an attorney’s "embarrassing predicament” of testifying and then being placed in the position having to argue the credibility and effect of his own testimony (Galarowicz v Ward, 119 Utah 611). It has been said, for example, in Robinson v United States (32 F2d 505) that in the absence of unusual circumstances there is general disapproval of a prosecuting attorney’s testifying since the jury would tend to give far greater weight to such testimony then that of the ordinary witness (see Ann. 54 ALR3d 100 et seq.).
In referring to improper remarks made by a prosecutor in his summation, the court in People v Lovello (1 NY2d 436, 439) said: "We repeat the previous condemnations by ours and other courts of such practices by any prosecutor in making himself an unsworn witness and supporting his case by his *151 own veracity and position” (see Berger v United States, 295 US 78). There is stated in Wigmore on Evidence (Chadbourn rev, vol 6, § 1911, p 780) this cogent reason precluding an attorney from testifying in his own advocacy case: "[T]he fear that the * * * argument might be so identified in the minds of the jury that they would give to the argument a testimonial credit and effect, as if the oath of the counsel as witness were pledged to it, and thus be unduly impressed with its weight.” The rationale is equally applicable to the case at bar.
The court finds inapplicable the first three exceptions referred to in subdivision (B) of DR 5-101. Mrs. Abbate’s testimony or participation relates to matters of substantial importance. The "substantial hardship” exception is similarly without merit. In assessing the prejudice to the People there would no doubt exist here some inconvenience and hardship flowing from the change in representatives. Mrs. Abbate is a most thorough, competent, experienced and able trial attorney. However, we have been fortunate during the trial of this case to have had the presence of Assistant District Attorney Johnston. He has participated fully in the course of the trial, is familiar with the case and is likewise a competent, able, trial attorney. Thus, this court finds that there is not such "substantial hardship” to the People by the disqualification of Mrs. Abbate within the intent of the Disciplinary Rules and as embraced in the constitutional fair trial concept.
In this enlightened era of the use of modern technological advances in our criminal justice proceedings, the real possibility or the appearance of unfairness must be scrupulously avoided. Within the spirit and scope of subdivision (A) of DR 5-102 and in the factual context in this case, disqualification of Assistant District Attorney Abbate is manifestly appropriate. It is a safeguard measure of insuring defendant a fair and impartial trial (see Renault v Auto Imports, 19 AD2d 814). To avoid the reality of or at least the appearance of the misuse of the State’s authority to prosecute offenders and at the same time demonstrate true impartiality in the presentation and summation of competent evidence, such conclusion is mandated. The District Attorney, a quasi-judicial official, in his duty to prosecute crimes prescribed by section 927 of the County Law, is granted broad discretion (see People v Tassiello, 300 NY 425). Concomitant with such power is the obligation imposed upon the District Attorney and the Assistant District Attorneys to assure a defendant a trial free from *152 infringement of his due process rights. Ethical considerations espoused in EC 7-13 of canon 7 of the Code of Professional Responsibility reads in part: "The responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict.” Equal to the motivation of the Assistant District Attorney to convict is his task to uphold the public trust in the criminal jury system. The duty to the sense of fairness and justice and the assumption of impartiality of a public prosecutor is essential to the integrity of our criminal justice system (People v Castelo, 24 AD2d 827).
The precept disqualifying counsel because of actual or apparent conflict of interest or in the event of the appearance of professional impropriety has application here. (See Code of Professional Responsibility, canons 7, 9; ABA Standards, Prosecution Function, § 3.1, Commentary, p 80 [approved draft, 1971].) The Court of Appeals in Greene v Greene (47 NY2d 447, 451) recognized the rule that attorneys are: "strictly forbidden from placing themselves in a position where they must advance, or even appear to advance, conflicting interests * * * This prohibition was designed to safeguard * * * against abuse of the adversary system and resulting harm to the public at large.” The conflict in this case arises from the harm to the defendant in the Assistant District Attorney’s advancing the voluntariness of defendant’s confession in her role as advocate and at the same time commenting upon and sanctioning, directly or indirectly, by implication or otherwise, the propriety of her own conduct in obtaining the statement. Such dual representation is inimicable to the constitutional principles mandating a fair trial for every accused (see People v Woodward, 66 AD2d 866, 870 [dissent opn]).
The court is aware of and has reviewed the following two recent nisi prius cases which arrived at diametrically opposed decisions: People v Arabadjis (93 Misc 2d 826) and People v Colon (NYLJ, June 13, 1977, p 11, col 2). The court finds more persuasive the conclusion reached in Colon (supra) disqualifying the Assistant District Attorney who took the defendant’s "Q and A” confession from conducting the trial. There, the court held that even if the Assistant District Attorney were not to actually testify he would "in his summation, necessarily find himself vouching for the veracity of whoever testifies for the People as to what happened during that Q and A.” The Arabadjis case is distinguishable to the case at bar on the *153 facts. There, the court denied the disqualification of the trial Assistant District Attorney in the absence of demonstration of the likelihood (1) that the trial prosecutor who took the defendant’s admission and/or confession will be called as a witness; and (2) the relevance of the trial prosecutor’s testimony. In Arabadjis the prosecuting Assistant District Attorney testiñed at a prior Huntley hearing. The court made a finding, by virtue thereof, that the prosecutor’s testimony was not relevant on the issue of voluntariness. Here, the defendant’s confession given to the trial prosecutor was recorded on video tape. Her participation and involvement in the "Q and A” custodial interrogation of the defendant was evident. Her "unsworn” testimony was a relevant factor in the determination of the voluntariness of defendant’s confession.
The court accordingly grants the defendant’s motion to disqualify Assistant District Attorney Abbate from making the summation to the jury. The defendant has met his burden of persuasion that the Assistant District Attorney’s summation would be prejudicial to defendant’s due process rights to a fair and impartial trial guaranteed by the Sixth Amendment to the United States Constitution, obligatory on the States through the Fourteenth Amendment due process clause (Wolk v Wolk, 70 Misc 2d 620, supra).
The court does not infer any ill-founded motivation in Assistant District Attorney Abbate’s insistance on pursuing the litigation until its conclusion. Further, it is not the intention of this court to usurp the judgment and discretion of the District Attorney of Bronx County in the manner and scope of the deployment of his personnel, provided the defendant’s due process right to a fair trial is not abrogated. Video tape evidence is now a fait accompli in the judicial system. It usually leaves no doubt in the mind of the viewing jury or trier of the fact, as to the person actively taking a defendant’s admission, statement and/or confession. With this in mind, an appropriate procedure should be instituted. It would seem to be more preferable, barring exceptional circumstances, that the Assistant District Attorney who is to conduct the trial not be the same Assistant District Attorney who took the initial video tape statement and/or confession (see Robinson v United States, 32 F2d 505, supra; People v Tait, 234 App Div 433, affd 259 NY 599).