THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
LLOYD PAPERNO, Appellant.

Second Department, December 6, 1982

### APPEARANCES OF COUNSEL

*Hoffman Pollok & Gasthalter* (*John L. Pollok* and *Edward Gasthalter* of counsel), for appellant.

*Robert M. Morgenthau, District Attorney* (*Robert M. Pitler* and *Jerrold L. Neugarten* of counsel), for respondent.

### OPINION OF THE COURT

DAMIANI, J. P.

In this case Lloyd Ira Paperno, a former law assistant and special referee for the Supreme Court, New York County, was indicted for eight counts of criminal contempt in the first degree in that he allegedly gave evasive, equivocal, conspicuously unbelievable and patently false testimony in three appearances before a Grand Jury investigating allegations of official misconduct in the civil

branch of the court where he worked. The facts have been fully aired in the three prior published opinions in this case (*People v Paperno,* 98 Misc 2d 99; 77 AD2d 137, revd 54 NY2d 294). Suffice it to say that after his motion to dismiss the indictment was denied (*People v Paperno,* 98 Misc 2d 99, *supra*), defendant's case was moved for trial before Judge HAROLD J. ROTHWAX and a jury. The prosecutor was named Anthony Ferrara. Judge ROTHWAX had supervised the Grand Jury before which defendant had been called to testify and Ferrara had been his chief interrogator before that Grand Jury. On the day that the trial was scheduled to commence, defendant moved to recuse Ferrara from trying the case. The basis for that motion, although rather inartfully presented to the court, was twofold. First, it was claimed that since Ferrara had questioned defendant before the Grand Jury, the defense wished to call him as a witness at the trial, and that he should, therefore, be recused under the so-called advocate-witness rule. Second, it was argued, in substance, that Ferrara's conduct before the Grand Jury would be a material issue at the trial and that he should be recused under the so-called unsworn witness rule. The trial court denied the motion.

The defense at the trial was that defendant's answers were not intended to frustrate the Grand Jury inquiry but rather were intended as truthful but circumspect answers which would avoid a prosecution for perjury or contempt. Defendant testified that he feared that Ferrara was out to "get" him and that it was this fear and Ferrara's hostile attitude and demeanor before the Grand Jury which prompted his answers. The petit jury found defendant guilty and he appealed.

This court reversed the judgment of conviction and ordered a new trial (*People v Paperno,* 77 AD2d 137, *supra*). We concluded that Ferrara's recusal was not required under the advocate-witness rule. At that time no appellate court in this State had as yet undertaken to enunciate a standard for the recusal of prosecutors in criminal cases based upon the unsworn witness problem. Our objective in attempting to formulate such a standard was (1) to preserve to the greatest extent possible the right of the prosecution to choose the attorney who would try the case while

(2) preventing a trial prosecutor, who had been involved in the underlying facts but who would not be called as a witness, from injecting his own knowledge of the facts and his credibility into the argument on behalf of his client, the People. We ruled that a prosecutor in a criminal case should be recused where his own conduct would be a material issue at the trial (77 AD2d 137, at p 149, *supra*). We reversed this defendant's conviction because Ferrara's conduct in questioning the defendant before the Grand Jury had become the major material issue at the trial and because he had unquestionably injected his own credibility into his argument on behalf of the People.

On appeal to the Court of Appeals, the order of this court was reversed (*People v Paperno,* 54 NY2d 294, *supra*). Basically the Court of Appeals did not disagree with our conclusion that the determination of whether to recuse a prosecutor on the unsworn witness ground should turn upon whether his prior conduct would be a material issue at the trial. Rather, the court concentrated upon the procedural and evidentiary aspects of the motion to recuse, holding that to obtain such recusal (p 296) "the defendant, prior to trial, [must make] a significant showing that the prosecutor's prior investigative or prosecutorial conduct will be a material issue at the trial" and that "[w]here no such showing is made, however, a conviction will be reversed only when the defendant demonstrates a substantial likelihood that prejudice resulted from the prosecutor's participation in the trial". The matter was remitted to this court for consideration of the facts in light of the rule enunciated by the Court of Appeals.

For the reasons which follow we hold that Judge ROTH-WAX properly denied defendant's pretrial motion to recuse Assistant District Attorney Ferrara. However, since Ferrara's conduct did in fact become the major material issue at the trial because it was the cornerstone upon which the defense was built, the court erred in allowing Ferrara to become an unsworn witness against defendant over the repeated and cogent objections of the defendant's counsel. We hold that defendant was thereby deprived of a fair trial and that his conviction must be reversed and a new trial ordered both as a matter of law under the recusal rule

promulgated by the Court of Appeals, and as a matter of discretion in the interest of justice.

THE PRETRIAL MOTION

On the day the trial was scheduled to begin, defendant's counsel, Mr. Arnold Roseman, moved to recuse Ferrara under the provisions of the Code of Professional Responsibility "on the grounds [sic] there is a reasonable basis I may call him as a witness". This, said Roseman, was because Ferrara was on the team of prosecutors who conducted the initial investigation, he filed affidavits for eavesdropping warrants in connection therewith and he presented the case to the Grand Jury and asked 95% of the questions posed to defendant during his appearances. He asserted that Ferrara's activities outside and inside the Grand Jury (including his tone of voice, demeanor, etc.) would be submitted for the evaluation of the petit jury and that for the jury to see Ferrara as a prosecutor at the same time would be prejudicial to defendant's right to a fair trial. Ferrara then countered that "I * * * do not believe that my conduct before the Grand Jury was in any way improper. I thought I was very courteous to his client". Defendant's counsel argued that Ferrara's alter ego, Assistant District Attorney Wilson, would take the stand and testify as to "how nice he [Ferrara] was and how conversational he was before the Grand Jury, and how it is a tea party inside". Ferrara would then sum up to the jury and argue that his conduct was proper.

On this appeal, the People have focused on the claim that the recusal motion was untimely because "[defendant's] attorney had been informed two months prior to the scheduled start of his trial that Ferrara would prosecute his case". Defendant argues conversely that his motion, made on the day that the trial was to commence, was timely because his "trial counsel vehemently denied knowledge of Ferrara's role as trial prosecutor until shortly before making the motion". This record clearly presents an unresolved question of fact on the issue of the timeliness of the recusal motion. The existence of that factual dispute was noted by the Court of Appeals (54 NY2d 294, 297, n 2, *supra*). In our view it cannot be resolved on the present record and would require a remittal to Criminal Term for a hearing were it

not for the fact that defendant's pretrial motion was defective for another more substantial reason.

In its opinion in this case, the Court of Appeals stated in relevant part (p 302):

"We begin with the proposition that, on a pretrial motion to disqualify the prosecutor, it is incumbent upon the defendant to make an adequate showing that the pretrial activity of the prosecutor will render his participation in the trial unfair. *A mere assertion by the defendant that he intends to question some aspect of the prosecutor's conduct is insufficient. Rather, the defendant must demonstrate that there is a significant possibility that the prosecutor's pretrial activity will be a material issue in the case.*

"Thus, in an evasive contempt case such as the present one, where the prosecutor's conduct before the Grand Jury is called into question, *the defendant must demonstrate on the pretrial motion that such conduct will have a bearing on the substantive issues to be raised at trial. If, for example, the defendant makes a substantial and satisfactory showing prior to trial that the attitude and questioning of the prosecutor before the Grand Jury were the cause of his 'evasive' answers, disqualification of the prosecutor will be required.* It is not a sufficient basis for recusal, however, to merely claim that the prosecutor observed the defendant giving his testimony, or otherwise observed the circumstances under which testimony was given. In another situation in which this type of problem is likely to arise, where the prosecutor has participated in taking the defendant's confession, the defendant must establish, not simply that the prosecutor observed the defendant's demeanor or the activity of others, but that the prosecutor's own conduct will be relevant to a material issue, such as the voluntariness of the confession (see *People v Arabadjis*, 93 Misc 2d 826)" (emphasis added).

In order to show that Ferrara's conduct would have a bearing on the substantive issues to be raised at the trial the defendant of necessity had to explain his proposed line of defense, namely that it was Ferrara's intimidating demeanor and style of questioning which heightened defendant's fear of a prosecutorial trap, thereby causing him to be extremely circumspect in his answers.

The minutes of the proceedings on March 23, 1979, during which defendant made his motion to recuse the prosecutor, commence with a discussion between court and counsel concerning the court's request for a list of the names of the witnesses for each side which the court wished to show prospective jurors "with a view to determining whether or not any of those jurors knew any of those witnesses" and thereby avoid the possibility of the need to declare a mistrial on that ground during the later stages of the trial. Defendant's counsel expressly resisted that request upon the ground that the court could not require him to "disclose his defense if he had a defense or if he decided to go forward, etc." Thereafter defendant moved to recuse the prosecutor and Judge ROTHWAX denied the motion stating in relevant part:

"That's untimely and it's unfair, and the motion will be denied on that issue.

"However, reaching the merits, it should also be noted that *no offer of proof has been made*. It is clear that the prosecution's case must rely upon the records of the Grand Jury proceeding. No extraneous proof in a case of this type is permitted. The D.A. cannot introduce in support of his contentions anything other than or beyond the Grand Jury minutes * * *

*"Now you have assiduously adhered to the view so far accepted in American Law that a defendant need not disclose his defence in advance of trial,* except for certain statutory exceptions heretofore referred to. *Nevertheless, there is nothing in the Law that precludes you from doing it in support of motions which you otherwise make* * * *

*"You can't argue you need Fererra [sic] for your defence and also say 'what my defence is is my business.'* I don't operate in a vacuum. The District Attorney should not be obliged to either. They shouldn't have to speculate and worry what Roseman's defence is and is he going to call Fererra [sic]" (emphasis added).

Because defense counsel refused to adequately explain the nature of his client's defense it was not precisely clear exactly how and why Ferrara's conduct would be a material issue in the case. Accordingly, it is our opinion that the

pretrial motion was properly denied. That does not end the matter, however.

The Court of Appeals went on to state that where the pretrial motion is denied the court often should take precautionary measures (54 NY2d 294, 303-304, *supra*): "We emphasize that the necessary showing of the need to recuse the prosecutor must be made at this pretrial stage. *In those cases in which the defendant has not made the necessary showing, but there is nevertheless some danger that the prosecutor's pretrial activity might allow him to unfairly influence the jury by injecting his own credibility into the trial, the court should take steps to avoid prejudice to the defendant in this regard.* Thus, for example, if the prosecutor has participated in taking defendant's confession and the voluntariness of the confession is a major part of the defense case, those portions of the confession suggesting the prosecutor's prior involvement may, in an appropriate case, be redacted. This procedure will lessen the opportunity for improper suggestions that the prosecutor personally stands behind the validity of the confession as a result of his personal involvement in the circumstances under which it was taken. Of course, the prosecutor must himself scrupulously avoid informing the jury of his prior role in dealing with the defendant" (emphasis added).

Although the defendant failed to sufficiently explain the nature of his defense and therefore to clearly demonstrate why Ferrara's conduct would be a material issue at the trial, the trial court was clearly put on notice that defendant intended to adduce evidence concerning Ferrara's style of questioning and that defendant was concerned that it would be unfair to allow Ferrara to make argument to the jury concerning his own conduct. The court could have, and in our view should have, cautioned Ferrara about arguing the propriety of his own actions and it could have concealed from the petit jury the fact that it was Ferrara who questioned defendant before the Grand Jury by redacting the minutes of the Grand Jury proceeding to delete Ferrara's name and to substitute "Assistant District Attorney Smith" or "Jones" in its stead. The failure to do so ultimately resulted in a grossly unfair trial.

THE TRIAL

With respect to events at the trial the Court of Appeals said (p 304): "[N]otwithstanding the precautions that may be taken by the court and by the prosecutor, subsequent developments at the trial may demonstrate that defendant was deprived of a fair trial. Where the court has denied the motion to recuse the prosecutor or has fashioned a less drastic remedy, the defendant's conviction will be reversed only if he satisfactorily establishes a substantial likelihood of prejudice flowing from the prosecutor's subsequent conduct (considering whether timely protest had been registered with respect thereto). *Thus, where the prosecutor's pretrial conduct in fact becomes a material issue at the trial and his conduct at the trial improperly allowed him to become an unsworn witness against the defendant, thereby causing the defendant to suffer such a likelihood of prejudice, the defendant's resulting conviction cannot stand"* (emphasis added).

In our opinion this test has been fully met. With the opening statement of defendant's counsel the full nature of the proposed course of the defense was made clear but it was then too late to conceal from the jury the fact that Ferrara had been defendant's interrogator before the Grand Jury.

The People's first witness was Assistant District Attorney Harold J. Wilson who had also been on the investigatorial team and who had been present before the Grand Jury. He testified on direct about the physical setup of the Grand Jury room, the type of questioning, the playing of wiretapped conversations for the defendant, etc. On crossexamination Wilson was asked about how Ferrara conducted the questioning of the defendant before the Grand Jury and answered that he had done so in a quiet tone of voice. He was also questioned about Ferrara's methods of phrasing questions, whether Ferrara accused defendant of quibbling in his answers, and whether Ferrara restricted defendant's ability to take notes.

The next part of the People's case was the transcript of the defendant's testimony before the Grand Jury. Defense counsel asked the court how the reading of that testimony

to the petit jury would be handled and the following colloquy ensued:

"THE COURT: The way I've done it on other trials and the way I intend to do it on this trial, where the document is as this one is, a lengthy one involving many questions and many answers, it is my conclusion that the reading of that by one reader would be stupified and that a jury cannot possibly understand or appreciate its contents. The District Attorney in past cases has requested that he be permitted to ask the questions that he asked in the Grand Jury and to have a reader from his office read the answers given by [defendant]. In the past I have agreed with that with a proviso that the reader from the D.A.'s office respond in a neutral rather than a dramatic fashion. I don't expect there to be a dramatic reading, but a clear and neutral reading of the answers given by the defendant in the Grand Jury.

"I've indicated further that I will indicate to the jury that the person who reads the answers is simply that, a reader, he is not a witness, he will not be sworn. The sole purpose of permitting the District Attorney to proceed in this way is so that the jury can better understand the contents of the questions and answers asked of the defendant during his appearances in the Grand Jury.

"MR. ROSEMAN [defendant's attorney]: Shall I place my objections on the record? That's what I meant.

"THE COURT: Why don't you place your objections on the record now * * *

"MR. ROSEMAN: All right. *I'm going to object mainly to the procedure of Mr. Farara [sic] reading the questions since he is the prosecutor and he's actually become a witness reading the questions to the jury so that it's enhancing a prosecutorial's [sic] credibility in the eyes of the jury.*

"Secondly, if this exhibit goes into the Grand Jury, I can't cross examine this exhibit, this colloquy between Mr. Farara [sic] and somebody from his District Attorney's office. In the alternative, if Your Honor is going to permit that procedure, *I ask that neutral parties be required under the Court's agents [sic, aegis?] to read the questions and the answers like Court Reporters who have done this at the end of a trial when the jury goes out and asks for testimony [to]*

*be re-read* [*and*] the District Attorney and neutral observer from his office is [*sic*] not required to read the Q and A like the Court Reporter does it. Usually, he does it alone, sometimes I've seen two Court Reporters read the Q and A. That's my objection. Your Honor. That Mr. Farara's [*sic*] credibility is being enhanced, he's the advocator here, he's the prosecutor in the transcript. While Your Honor gives these admonitions they don't raise their voice, they don't emphasize, what I've seen already that the questions Mr. Farara [*sic*] asked the witness, there will be certain emphasis on the wrong sylable [*sic*].

"THE COURT: An experience that has not been the case. It's a — in fact, you have read the record with some emphasis. Mr. Farara, [*sic*] you have the Court's assurance, will not read it that way, he'll read it in a neutral term [*sic*]. Past experiences indicated to me he will do that. In the past, no defense attorney objected to the way the transcript is read. In here, with the prosecutor's points of view, *the danger of a District Attorney becoming an advocate and part of that record to the defendant seems to me not substantial. So long as he reads the matter properly and neutrally and clearly, it seems to me it is appropriate he reads in that fashion.* You have an exception to that ruling" (emphasis added).

After the transcript was read, the prosecution rested and, among other witnesses, defendant took the stand in his own defense. He testified that Ferrara had treated him abusively before the Grand Jury, threw rapid-fire questions at him without giving him an adequate time to answer, told him to stop taking notes which he needed to avoid becoming confused, asked questions in an insistent, demanding, hostile tone of voice and required him to give yes or no answers without allowing explanation.

In summation Mr. Roseman argued that Ferrara's neutral reading of the Grand Jury testimony was part of an act and that actually he had been extremely hostile before the Grand Jury. Responding to this, in summation, Ferrara denied that he had "put a veneer or a gloss on my manner" when reading the transcript, claiming "You saw it. You heard it. You experienced what he experienced as nearly as it could be reconstructed."

Thus when the case went to the petit jury the battlelines were drawn. Did the defendant give equivocal answers before the Grand Jury in order to frustrate its investigation as the People claimed, or, as the defense claimed, were the defendant's answers intended to be circumspect and careful in order to avoid a perceived prosecutorial trap, the fear of which was in great part engendered by the conduct of, and mode of questioning adopted by Ferrara before the Grand Jury? Resolution of the disputed factual question was greatly influenced by five factors, namely: (1) Wilson's testimony, *inter alia,* that Ferrara used a quiet tone of voice before the Grand Jury, (2) defendant's testimony that Ferrara's tone of voice and manner were intimidating, (3) the reading of the transcript by Ferrara in a concededly neutral manner, over the objection of the defendant, (4) the defense argument in summation that Ferrara had actually acted differently before the Grand Jury than he had during the reading, and (5) Ferrara's argument in summation that the reading before the petit jury was an accurate "reconstruct[ion]" of the events before the Grand Jury, and his numerous references in summation to what "I" did during the *res gestae* of the alleged contempt and the events surrounding it.

On this remand the People have dealt with the question of prejudice to the defendant arising from Ferrara's participation in the trial by taking the two elements in which Ferrara participated, the reading of the transcript and the summation, and treating them separately. Thus they say the reading was not prejudicial because defendant's own counsel conceded in summation that in Ferrara's reading of the transcript he had been calm and polite thereby establishing that the reading was done in a neutral manner. Next they treat Ferrara's comment in summation that the defendant's Grand Jury appearance had been reconstructed "as nearly as it could be". This, say the People, was just an isolated comment in a long summation, was not objected to by the defendant, and was made in response to the summation by defense counsel. Next they say that the comment was not a vouching for the accuracy of a re-enactment but rather was meant to indicate that if he had put a "gloss" on his reading it would have taken more time

than the actual testimony took before the Grand Jury, whereas the reading took approximately as long as did defendant's appearance before the Grand Jury.

We do not believe that these elements can be separated. The petit jury was called upon to decide how Ferrara behaved in questioning the defendant before the Grand Jury and whether his behavior influenced defendant's state of mind and thus the answers he gave. Wilson said Ferrara questioned defendant in a quiet tone of voice, defendant said that he did not. The danger in having Ferrara read the transcript was that the jury would see the reading not as merely a way of conveying what questions were asked and what answers were given, but rather as a dramatization of past events. The defendant objected on that ground and it was then that the court could have, but did not, take the simple step of having two court reporters do the reading. Such a solution would have been in accord with the Court of Appeals suggestion that "the court should take steps to avoid prejudice to the defendant" by preventing situations in which the prosecutor could inject "his own credibility into the trial" (54 NY2d 294, at p 303, *supra*). The trial court's denial of defendant's request to have the Grand Jury transcript read by third parties was therefore error. That error was extremely prejudicial because it set the stage for the summations in which defendant had, of necessity, to argue to the jury that what had happened before the Grand Jury was different than the calm and polite reading which they had seen. By calling the reading a "reconstruct[ion]" of defendant's Grand Jury testimony, Ferrara was plainly vouching for the fact that he read and acted his part in the same way as he had spoken and acted before the Grand Jury. In addition to this, Ferrara's comments in summation about what he had done during the events leading up to and during defendant's Grand Jury appearance made it plain that the viability of the defense offered by defendant came down to a contest of credibility between Ferrara and the defendant himself.

We decided on the initial appeal, and we continue to believe, that the reading of the Grand Jury testimony by Ferrara, his comments thereon, and his references to his

own participation in the case made Ferrara an unsworn witness against defendant. With respect to the People's argument that defendant did not object to the "reconstruct[ion]" statement in Ferrara's summation, we hold that the defendant's continuing objection to the reading itself, which ineluctably led to that comment, preserved any error of law for review by this court.

The opinion of the Court of Appeals states that where, over objection, the prosecutor does become an unsworn witness against the defendant and defendant "establishes a substantial likelihood of prejudice" flowing from that fact, "the defendant's resulting conviction cannot stand" (*People v Paperno*, 54 NY2d 294, 304, *supra*). That statement is nothing more than a direction to apply a harmless error analysis to the unsworn witness error and to disregard it if it did not affect the substantial rights of the defendant (CPL 470.05, subd 1). Although we have already expressed our opinion that the error was not harmless (77 AD2d 137, 150, *supra*), we find it necessary to reiterate our reasons for that conclusion at this juncture.

We acknowledge that the defendant's claim that because of his fears of a prosecutorial trap, he gave overly cautious, but still technically truthful answers, and that he did not intend to frustrate the Grand Jury inquiry, is somewhat hard to credit. It asked the triers of fact to believe that he answered truthfully when he told the Grand Jury that he could not remember whether certain conversations contained bribe offers to him to fix cases or whether certain conversations between himself and Abram Brown related to fixing cases. One might reasonably conclude that an honest man in defendant's position could not possibly have forgotten conversations in which he was asked, or in which he asked others to forsake their public duty for money, and that this memory would have remained indelible even in the face of the most outrageous questioning by his inquisitor before the Grand Jury. Be that as it may, the fact that Ferrara became an unsworn witness against defendant was not an isolated, minor or merely technical error. It went to the heart of the defense.

Resolution of that defense turned upon the credibility of either the sworn testimony of defendant or the unsworn

statements of Ferrara, vouching for the accuracy of the reading of the testimony as a dramatization of past events, and relating to other aspects of his participation in the events leading to the instant prosecution.

In previously holding that the error was not harmless we stated (77 AD2d 137, 150-151, *supra*):

"It cannot be said that the relative difference in [the positions of defendant and Ferrara] was not apparent to the jury and did not improperly influence their resolution of the issue of credibility. As the Supreme Court of the United States said in *Berger v United States* (295 US 78, 88, *supra*):

" '[A public prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer * * *

" 'It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.' "

The error in this case was so egregious that it can only be characterized as one which deprived the defendant of a fair trial. In *People v Crimmins* (36 NY2d 230, 238) the Court of Appeals observed that the right to a fair trial is of constitutional dimension and that: "Not only the individual defendant but the public at large is entitled to assurance that there shall be full observance and enforcement of the cardinal right of a defendant to a fair trial. The appellate courts have an overriding responsibility, never to be eschewed or lightly to be laid aside, to give that assurance. So, if in any instance, an appellate court concludes that there has been such error of a trial court, such misconduct

of a prosecutor, such inadequacy of defense counsel, or such other wrong as to have operated to deny any individual defendant his fundamental right to a fair trial, the reviewing court must reverse the conviction and grant a new trial, quite without regard to any evaluation as to whether the errors contributed to the defendant's conviction. The right to a fair trial is self-standing and proof of guilt, however overwhelming, can never be permitted to negate this right" (see, also, *People v Mleczko,* 298 NY 153, 162-163; *People v Elbroch,* 250 App Div 583, 590; *People v Saccomanno,* 25 AD2d 528, 529).

In summary we hold that the judgment appealed from must be reversed and a new trial ordered. Although the trial court properly denied defendant's pretrial motion to recuse Assistant District Attorney Ferrara, it erred in failing, over defendant's repeated objections, to take steps to see that Ferrara did not become an unsworn witness against him. Our reversal is both on the law and an exercise of our discretionary power to order a new trial in the interest of justice. However implausible defendant's defense, he was entitled to have it fairly and impartially determined by a jury of his peers free from the type of error which occurred at his initial trial.

WEINSTEIN, O'CONNOR and BRACKEN, JJ., concur.

Judgment of the Supreme Court, New York County, rendered June 14, 1979, reversed, on the law and as a matter of discretion in the interest of justice, and new trial ordered. (The appeal was transferred to this court by order of the Appellate Division, First Department, dated February 28, 1980.)