■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WALTER NEUMANN, Appellant.—Judgment, Supreme Court, New York County, rendered April 22, 1977, convicting defendant, after jury trial, on two counts of perjury in the first degree (Penal Law, § 210.15), and sentencing him to five years' probation, is affirmed. The Presiding Justice's dissenting opinion quite fully sets forth the facts. The definition of "firearm" contained in section 265.00 of the Penal Law is of course irrelevant to the present case. It is a definition "As used in this article and in article four hundred," neither of which relates to a perjury prosecution. As stated in *United States v Bonacorsa* (528 F2d 1218, 1221): "A defense to a charge of perjury may not be established by isolating a statement from context, giving it in this manner a meaning entirely different from that which it has when the testimony is considered as a whole * * * If, in the natural meaning in the context in which words were used they were materially untrue, perjury was established." The jury could find that in the examination of the defendant the parties were using the words "firearm" and "weapon" interchangeably. Even a pellet gun might easily be included within such a common usage, as indeed Roche, the assistant investigation commissioner, testified. Thus one dictionary defines "firearm" as including "a gun from which a projectile is fired." (American College Dictionary, 1947, Random House.) As pointed out in *United States v Bonacorsa, (supra,* p 1221): "In any event, it was for the jury to decide whether appellant gave, or could have given, any other meaning to the question * * * Absent fundamental ambiguity or impreciseness in the questioning, the meaning and truthfulness of appellant's answer was for the jury." The Judge submitted to the jury the question of the meaning of the statement. He said: "In determining whether the Defendant was, whether he made a false statement when he was asked whether or not he ever discharged a firearm at pigeons in the Prospect Park Zoo you must

determine what he meant when he denied discharging a firearm." No doubt this aspect of the charge could have been elaborated if requested. There was neither exception to the charge nor any request for such elaboration. Concur—Sullivan, Markewich, Lupiano and Silverman, JJ.

Murphy, P. J., dissents in a memorandum, as follows: Defendant Neumann, the then acting supervisor of the Prospect Park Zoo in Brooklyn, was called before the New York City Department of Investigation (the Department) on April 14, 1976. The Department was conducting an investigation into the affairs, functions, accounts, methods, personnel and efficiency of the Department of Parks. On that date, the defendant was examined by Thomas Roche, an assistant investigation commissioner. During a portion of his interrogation, the defendant was asked the following questions that are pertinent to this appeal: "Q. Do you know if anybody has ever used a firearms to try to disperse the pigeons? A. Not to my knowledge. Q. Have you ever used a firearms to disperse the pigeons? A. I have not. Q. Do you own any firearms? A. I do. Q. Could you tell me what kinds they are? A. 306, very powerful gun much too big for pigeons. Q. Do you own any other firearms? A. Well, I have some in my summer home in Miami, but they are not registered. Also I have a New York City pistol permit. Q. For what kind of weapons? A. Which? Q. The New York City Pistol Permit? A. .357 Magnum. Q. Do you own any other weapons at home in New York? A. I have a 12 gauge shotgun. Q. Have you ever registered any weapons with the City of New York? A. All of my weapons are registered. Q. Do you know which ones those are? A. All of them. Q. All the ones you mentioned? A. Yes. Q. Are there any others those that you haven't mentioned? A. No. Q. You own a .22? A. I do not. Q. Do you own a pellet gun? A. I do not. Q. Does the zoo own a pellet gun? A. Not to my knowledge. Q. Does the zoo own a .22? A. Not to my knowledge. Q. Where are your own personal weapons located? A. At my residence. Q. In Staten Island? A. That's correct. Q. And, you say you've never discharged a weapon or firearms at any of the pigeons or birds at the zoo? A. Correct. Q. Have you ever seen anybody do that? A. No. * * * Q. I'd like to go back to one other area we discussed and that is the pigeons. Have you ever, at any time, discharged a firearms at any of the pigeons? A. No. Q. Has any employees of the zoo? A. Not to my knowledge. Q. Did you ever discharge a firearm anywhere within the geographical confines of the zoo? A. No. Q. Are you certain of that? A. I don't ever recall doing it. Unless—Well, the tranquilizer gun. Q. Other than the tranquilizer gun? A. No. Q. And you're absolutely certain you never discharged a firearm in the Elephant House at the pigeons? A. Certain. Q. Have you ever seen anyone else doing that? A. No I haven't. We on occasion would discharge the tranquilizer gun to chase them it makes a loud noise. But that's nothing more than a noise that's all it is. Anyone seeing would not know that unless they were thoroughly familiar. Q. But the tranquilizer gun does fire anything. A. Only darts which are quite large and inaccurate. It would be inappropriate to use for shooting pigeons. Q. Where is your office located? A. Elephant House. Q. You think if somebody was discharging a gun in the Elephant House you would hear? A. If I were there I believe, I would. Q. Your own private weapon for what purpose do you use them? A. I am a target shooter. Q. You belong to a club? A. I do. Q. Which club? A. Magnum Rifle and Pistol. Q. Where is that located? A. Well, the range what one would call the club that is the Fort Hamilton Parkway Range. I don't know the address. I am sure you would be able to find it yourself. Q. That's in Brooklyn? A. Yes. Q. Have you ever owned a .22 rifle? A. Not in the last— More than five years, maybe 7, maybe 9. It's been so long. Q. Have you

owned a .22 in the last year? A. No. Q. Have you used a .22 in the last year? A. I spend a great deal of time in Pennsylvania where I use a great many firearms and I probably have. Q. Have you borrowed a .22 from anybody in the last year? A. No. Q. Have you used a pellet gun in the last year? A. I don't recall using one in the last—many years before that". Subsequently, a two-count indictment charging perjury in the first degree (Penal Law, § 210.15) was filed against the defendant. The first count charged that the defendant "swore falsely that he never discharged a firearm at any of the pigeons or birds at the zoo". The second count charged that he "swore falsely that he never discharged a firearm within the geographical confines of the zoo". The defendant moved in the pretrial stage to dismiss the indictment on the ground, *inter alia,* that he did not discharge a "firearm", as that term is defined in subdivision 3 of section 265.00 of the Penal Law. Specifically, defendant maintained that a .22 calibre rifle fell within the definition of "rifle" (Penal Law, § 265.00, subd 11) rather than within the statutory definition of "firearm". Judge Rothwax denied this branch of the motion to dismiss upon the following grounds: "b. The defendant contends that the indictment should be dismissed because he did not, in fact, swear falsely as required by Penal Law section 210.15, that he never discharged a firearm at any of the pigeons or birds of the zoo and that he never discharged a firearm within the geographical confines of the zoo, claiming that a rifle is not a 'firearm' as defined by section 265(3) of the Penal Law. However, whatever the merits of defendant's argument here on the Kings County charge of having violated Penal Law section 265.35, 'a defense to a charge of perjury may not be established by isolating a statement from context, giving it in this manner a meaning entirely different from that which it has when the testimony is considered as a whole. * * * If in the natural meaning in the context in which words were used they were materially untrue, perjury was established.' United States v. Bonacorsa, 528 F. 2d 1218, 1221 (2nd Cir., 1976). Further, from an examination of defendant's testimony before the Department of Investigations, it is clear that the words 'firearm' and 'weapon' were being used interchangeably by the examiner to include a rifle." At trial, Judge shea correctly found that he was bound by Judge Rothwax's prior decision under the doctrine of law of the case. Therefore, in denying defendant's various trial motions to dismiss the indictment, Judge Shea ruled that the defendant had understood the term "firearm" to encompass a .22 calibre rifle. At trial, the defendant further contended that an air-powered pellet gun was not technically a "firearm" under the statutory definition *(People v Schmidt,* 221 App Div 77). Judge Shea, again relying upon the prior decision of Judge Rothwax, ruled that the defendant had understood that a pellet gun was included within the term "firearm". In his charge, Judge Shea informed the jury, consistently with his trial rulings, that "the People have presented witnesses who testified about incidents which allegedly took place in the elephant house or the lion house of the Prospect Park Zoo concerning the firing of a firearm, a rifle or a pellet gun." Thus, no issue was presented to the jury as to what the defendant understood by the term "firearm". The jury was left, *inter alia,* with the narrower issue of whether they believed the testimony of the prosecution witnesses that the defendant had discharged both a .22 calibre rifle and a pellet gun under the circumstances set forth in the indictment. There is sufficient evidence in the record to support the conviction on the two counts, as the case was ultimately presented to the jury. However, a critical question remains as to whether the examiner's questions were so imprecise as to warrant a reversal of the conviction and a dismissal of the

indictment. Precise questioning is imperative as a predicate for the offense of perjury *(Bronston v United States,* 409 US 352, 362). The burden is on the questioner to pin the witness down to the specific object of the questioner's inquiry (p 360). Where an indictment is based upon questions that are artless and vague, it should be dismissed. *(United States v Slawik,* 548 F2d 75, 86.) At trial, Roche testified that to him "a firearm means a rifle, pistol, an air gun, anything that ejects a projectile". Roche conceded, as the transcript of the examination confirms, that he never defined the term "firearm" for defendant under subdivision 3 of section 265.00 of the Penal Law or otherwise. Nonetheless, from the excerpts of the examination quoted above, it is evident that the defendant understood the term "firearm" to include a .22 calibre rifle. On the other hand, it is very doubtful whether the defendant realized that a pellet gun was being classified as a "firearm" for purposes of his examination. It is surely not evident whether a pellet gun should or should not be classified as a "firearm". (See *People v Schmidt, supra.)* Furthermore, it should be emphasized that the defendant owned many weapons and that he belonged to the Magnum Rifle and Pistol Club. Hence, it is fair to assume that his understanding of and his use of terminology in the weapons area was exceedingly exact. Neither the defendant nor, for that matter, the questioner ever referred to a pellet gun as a "firearm". Consequently, in the context of the examination, there is no reason to infer that the defendant, a weapons expert, understood that a pellet gun was a "firearm". Even though the questioner, whether correctly or incorrectly, may have viewed the pellet gun as a "firearm", it was incumbent upon him to impress that otherwise unknown fact upon the defendant *(Bronston v United States,* 409 US 352, 360, *supra).* This he failed to do. From the defendant's answers that underlie the instant perjury indictment, it is impossible to determine whether he was denying that (i) he had fired both a .22 calibre rifle and a pellet gun or (ii) he had fired a .22 calibre rifle without mention of the pellet gun. This ambiguity in defendant's answers becomes significant as a result of the manner in which this case was submitted to the jury. As was previously noted, the jury was presented with the narrow issue of whether they believed the defendant had discharged a "firearm", a .22 calibre rifle or a pellet gun. If the jury beleived that the defendant had fired the pellet gun but not the .22 calibre rifle, then conviction cannot be sustained under either count, for it is unclear from defendant's answers whether he considered a pellet gun to be a "firearm". Since the jury may have found that the defendant only fired the pellet gun, the conviction becomes fatally suspect and cannot be permitted to stand. The problems arising from the ambiguous use of the word "firearm" in the indictment could have been avoided had the defendant been charged with perjury with reference to his specific denial that he had recently used a .22 calibre rifle and a pellet gun. Since the indictment was based on very imprecise and vague questions, the judgment of the Supreme Court, New York County, rendered April 22, 1977, convicting defendant of two counts of perjury in the first degree, should be reversed, on the law, and the indictment should be dismissed.