Edward STAHL, Petitioner,

v.

The STATE OF NEW YORK and Robert Abrams, as Attorney General of the State of New York, Respondents.

No. 81 Civ. 4752.

United States District Court,
S. D. New York.

Aug. 19, 1981.

David Lenefsky, New York City, for petitioner.

Robert M. Morgenthau, Dist. Atty., New York City, for respondents; Amyjane Rettew, Asst. Dist. Atty., New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Petitioner, Edward Stahl, an attorney, was convicted after a jury trial in the Supreme Court, New York County, on two counts of criminal contempt, first degree, in violation of § 215.51 of the Penal Law of the State of New York,[1] and was sentenced to serve concurrent nine-month terms of imprisonment. The conviction was unanimously affirmed by the Appellate Division, First Department, and by the New York State Court of Appeals.

Petitioner, by this habeas corpus proceeding commenced pursuant to 28 U.S.C. § 2254, challenges the judgment of conviction as void based upon claims of violation of his federal constitutional right to due process of law. He contends that: (1) the evidence was insufficient to permit a rational trier of the facts to find guilt beyond a reasonable doubt; (2) the refusal of the trial court to permit a witness to testify

deprived him of his Sixth Amendment right to compel the appearance of a witness; (3) the prosecution suppressed exculpatory material; and (4) the statute on which the charges were based is unconstitutional as applied to him.

The essence of the charges against petitioner centered about a grand jury investigation into the alleged corruption of public employees at the Civil Term of the New York State Supreme Court, New York County. The grand jury sought to ascertain whether any such employees had accepted illegal payments of money from certain lawyers and litigants to influence litigation in that court. The inquiry concerned the commission of the crimes of bribery, giving or receiving unlawful gratuities, and conspiracy. A specific thrust of the grand jury investigation was to determine whether one Abram Brown, then a law assistant in the Supreme Court, New York County, as well as other court employees, had agreed to influence the outcome of certain motions in pending litigation in return for money payments. Another target of the inquiry was Lloyd Paperno, a neighbor of petitioner in Atlantic Beach, New York, who was employed as a special referee by the Supreme Court. Brown died during the pendency of the investigation.

One of the matters under investigation was an action for an accounting commenced in the Supreme Court, New York County, against petitioner by his former law partners, entitled *Sharinn & Lipshie v. Stahl.* The litigation had been assigned to Justice Alfred M. Ascione who, on March 3rd, had issued a decision granting petitioner's cross-motion for the appointment of a temporary receiver pending determination of the lawsuit. However, the matter was settled following a conference held in the chambers of the Justice attended by the litigants and their lawyers.

Petitioner was granted immunity and testified before the grand jury on September 19 and November 15, 1977. Thereafter he

---

**1.** "A person is guilty of criminal contempt in the first degree ... when after having been sworn as a witness, before a grand jury, he refuses to answer any legal and proper interrogatory."

was indicted under five counts for criminal contempt.[2] He was convicted under Counts 3 and 4. Count 3 of the indictment alleged that the grand jury, among other matters, "[m]ore specifically ... sought to determine whether Lloyd Paperno had told the defendant [petitioner] that a court employee had said that the defendant had made a deal to pay money in exchange for a favorable outcome in the case of *Sharinn and Lipshie* against *Stahl*, and that the defendant had not lived up to that deal." [3] Under Count 4, the indictment alleged that the grand jury "[m]ore specifically ... sought to determine whether Lloyd Paperno had told the defendant that Paperno had been marked lousy at the courthouse because of the defendant's failure to pay money to the court employee who had worked on the case of *Sharinn and Lipshie* against *Stahl*." [4] The indictment charged that with respect to these matters the defendant "gave equivocal, evasive, conspicuously unbelievable and patently false answers" [5] and cited under Count 3 examples of his testimony:

Q. Well, has anyone ever told you in words or substance that a court employee said that you, Mr. Stahl, had promised money in exchange for a favorable outcome in the case of Sharinn and Lipshie Against Stahl?

A. Who do you mean by anybody? I don't understand the question.

Q. Has anyone ever told you that a court employee expects a bribe from you?

A. I don't recall any such conversation ever having taken place.

Q. Do you deny that you were told that a court employee expected money from you in exchange for a favorable outcome in the case of Sharinn and Lipshie Against Stahl?

A. I answered that question.

Q. What's your answer?

A. I answered it. I don't recall any such conversation ever having taken place.

Q. Did Lloyd Paperno tell you that Abe Brown said you, Edward Stahl, had promised him money in exchange for a favorable outcome in the case of Sharinn and Lipshie Against Stahl?

A. Again, I don't recall any such conversation ever taking place to the best of my ability.

Q. Do you admit that Mr. Paperno told you that?

A. I stand on my answer.[6]

There are answers of similar import.

With respect to the 4th count, examples of defendant's "equivocal" and "evasive" testimony were as follows:

Q. Mr. Stahl, did Lloyd Paperno ever tell you that Paperno had in words or substance been marked lousy at the courthouse because of your failure to pay money to a court employee who had worked on the case of Sharinn and Lipshie Against Stahl?

A. I don't recall that conversation either.

Q. After the March 21st, 1977 decision by Judge Ascione, did Paperno tell you that he had in words or substance been marked lousy at the courthouse?

**2.** Count 4 of the indictment was dismissed prior to trial because it was duplicitous, and the original Count 5 was renumbered Count 4. Petitioner was acquitted of two counts upon the trial.

**3.** Indictment, Appellant's Appendix, Appellate Division, Vol. I at A61.

**4.** *Id.* at A77.

**5.** *Id.* at A62, A78. *See People v. Fischer*, 53 N.Y.2d 178, 440 N.Y.S.2d 872, 423 N.E.2d 349 (1981); *People v. Iannillo*, 36 N.Y.2d 137, 142, 365 N.Y.S.2d 821, 325 N.E.2d 146 (1975) ("To

be guilty of contempt the witness need not flatly refuse to answer the questions put to him; false and evasive profession of an inability to recall, which amounts to no answer at all, is punishable as a criminal contempt"); *People ex rel. Valenti v. McCloskey*, 6 N.Y.2d 390, 398, 189 N.Y.S.2d 898, 160 N.E.2d 647 (1959) ("under criminal contempt statute, a response to a question may be so false and evasive as to be equivalent to no answer at all").

**6.** Indictment, Appellant's Appendix, Appellate Division, Vol. I at A62–63.

A. I don't recall.

Q. Because you had failed to pay?

A. I don't recall any conversation of that nature ever having taken place.[7]

■ Under New York law, "[t]he essence of any conviction for evasive contempt is that the jury shall find beyond a reasonable doubt that the defendant's response was intended as no answer at all and was thus tantamount to a refusal to answer," and it is unnecessary for the prosecution to establish that the event, conversation or other fact referred to in the questions did in fact occur.[8]

■ With respect to petitioner's claim, based upon *Jackson v. Virginia*,[9] that the evidence was insufficient to justify a rational juror to find guilt beyond a reasonable doubt, the Court has read the entire trial record. The Court concludes, contrary to petitioner's contention, that substantial evidence was before the jury upon which it could find beyond a reasonable doubt that the defendant's responses to questions were, as the People contended, equivocal, evasive, conspicuously unbelievable and patently false and intended as no answer at all. Indeed, as urged by petitioner, "[a] reading of the entire transcript of Mr. Stahl's interrogation ..., read alone or in context," [10] suggests that there was compelling evidence justifying a finding of guilt beyond a reasonable doubt. The charges of bribery and gift taking that were the subject of the grand jury investigation struck at the administration of justice in the State Supreme Court. Stahl claimed he had never been involved in any wrongdoing. In this circumstance, it taxes credulity to the breaking point to accept a response by petitioner, a lawyer, that he could not recall within a period of eight months whether Paperno had told him that Brown, a court employee, had said the petitioner made a deal to pay money in exchange for a favorable outcome in a case in which petitioner himself was a litigant (Count 3); and that he could not recall whether Paperno, a referee of the Supreme Court, a neighbor with whom he had discussed his litigation, had told petitioner that he, Paperno, had been marked lousy at the courthouse because of petitioner's failure to pay money to a court employee who had worked on the case in which he was an active litigant. A rational juror could readily have found that the petitioner's answers were patently absurd, conspicuously unbelievable, intentionally evasive, and tantamount to an unlawful refusal to answer. Petitioner's first claim is dismissed as without merit.

The next claim asserted by petitioner is that the refusal of the trial court to permit the State Supreme Court Judge who was in charge of the *Sharinn & Lipshie v. Stahl* litigation to testify deprived petitioner of his right to compel the appearance of a witness in violation of the Sixth Amendment.[11] Petitioner subpoenaed Judge Ascione to testify at the trial and an offer of proof was invited. Petitioner's trial lawyer stated the Judge would testify that at a conference he advised the parties to the *Sharinn & Lipshie v. Stahl* action and their attorneys that if the action were not settled he would appoint a receiver of the partnership's assets and that his March 3rd decision occurred in the normal course of judicial decision making. The testimony, as stated by petitioner's trial counsel, was offered on the issue of petitioner's state of mind when he testified before the grand jury. It was urged upon the ground that since petitioner and others interested in the litigation knew what the outcome of the case was going to be, there was no reason for petitioner to try to "fix" the case and no reason to be vague in his testimony before the grand jury; also, it was urged that the testimony was relevant to establish lack of motive in giv-

---

7. *Id.* at A78.

8. *People v. Fischer*, 53 N.Y.2d 178, 184, 440 N.Y.S.2d 872, 423 N.E.2d 349 (1981).

9. 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

10. Petitioner's Memorandum of Law at 15.

11. *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).

ing vague answers.[12] The trial court, with respect to the proffered proof, noted that "[t]he issue is whether or not Judge Asceone [sic] has relevant testimony to give with regard to Mr. Stahl's state of mind when he testified before the grand jury."[13] The trial court concluded that any statements made by the Judge in March 1977 were not relevant to petitioner's state of mind when he testified before the grand jury months later, in September and November 1977. Moreover, the court pointed out that to allow such testimony would open the door to the substantive charge as to whether in fact there was a "fix" in the case: "what this becomes is no longer a trial of the narrow issue of whether this defendant was intentionally evasive, but we get into highly prejudicial and arguably collateral area of whether the case was fixed"—a "collateral issue . . . so inflammatory that it threatens to obscure the major issue in this case," a view with which defendant's counsel agreed.[14]

■ To put the matter in proper perspective, it must be emphasized that the crimes of which petitioner was convicted were committed before a grand jury some six or eight months after the events as to which Judge Ascione's testimony was offered. Petitioner was convicted of then giving patently evasive and vague answers in response to questions *as to what he had been told by Paperno, viz.,* (1) that a court employee (Brown) had said that petitioner had promised money in exchange for a favorable outcome in the litigation to which he was a party, and (2) that Paperno had been marked lousy at the court because petitioner had failed to pay money to a court employee who had worked on the case. The clear thrust of the questions to which petitioner asserted lack of recollection was directed toward such conversations with or statements by Paperno. It is not claimed that Judge Ascione was present when these statements were made. Clearly the Judge could not testify whether petitioner and Paperno had discussed a payoff for a favorable decision or that because of petitioner's failure to make good Paperno had been marked lousy at the courthouse. Nor, in the circumstances, was Judge Ascione's announcement in March 1977 about what his decision would be if the parties did not settle their lawsuit, and that his decision and the conference with the parties occurred in the normal course of judicial decision making, relevant to petitioner's state of mind or motive in September and November 1977, when he testified before the grand jury. Petitioner's contention that it was relevant is not only without substance but borders on the specious. The court's ruling was not only correct but even if it were assumed to be evidential error, viewed against the totality of the entire trial record, it does not reach such constitutional infirmity as to require vacatur of the judgment of conviction.[15] Accordingly, the claim that petitioner was deprived of his right to compulsory process in violation of the Sixth Amendment of the Federal Constitution is dismissed upon the merits.

■ Petitioner's additional contentions are likewise without substance and merit little discussion. He charges that the District Attorney failed to disclose exculpatory evidence—that the trial jury should have been advised that Mr. Paperno had testified before the grand jury that the purported conversations about which petitioner was questioned never took place. In effect, petitioner contends that the prosecution should have vouched before the trial jury for the credibility of a witness whom it believed was untrustworthy. Petitioner at the time of his trial was aware that Mr. Paperno had been a witness before the grand jury and if petitioner sought Paperno's testimony, the subpoena power of the court was available to compel his appearance. Pursuant to a court order petitioner

---

**12.** Appellant's Appendix, Appellate Division, Vol. II, at 272–73.

**13.** *Id.* at 273.

**14.** *Id.* at 274–75.

**15.** *Cf. Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

had a copy of Paperno's grand jury testimony for almost a year before the trial.[16] Petitioner made no attempt to call the witness. He cannot be heard to assert a constitutional claim because the prosecution did not advise the jury of Paperno's grand jury testimony, which obviously the prosecution did not accept since Paperno himself was indicted on similar charges. Paperno was convicted on seven counts of criminal contempt in the first degree, in that he contumaciously and unlawfully refused to answer material questions before the grand jury by giving "equivocal, evasive, conspicuously unbelievable and patently false testimony." [17]

Finally, petitioner contends that the criminal contempt statute under which he was convicted is unconstitutional as applied to him. He urges that it is void for vagueness in that it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute," [18] and encourages arbitrary, erratic arrests and convictions.[19]

▇▇▇ Petitioner never raised this issue during the trial or on his direct state appeals. New York requires the denial of relief for a defendant's failure to raise the issue on appeal.[20] Petitioner's application in support of the writ of habeas corpus contains no allegation of cause for noncompliance or a showing of actual prejudice resulting from the alleged constitutional violation. Thus the failure to present the issue to the State Courts requires dismissal under the principle of comity and exhaustion of state remedies.[21] Petitioner may apply to the New York courts for post-judgment relief under § 440.10 of the New York Criminal Procedure Law. True, the prospect of relief may be dim since he will have to justify his failure to raise the constitutional claim before the state courts; however, that is a matter for the state courts to decide.[22]

While the petition submitted to this court is silent on this subject, petitioner's counsel seeks in a reply brief to excuse this failure, contending that the issue has been presented to the state courts in other cases, which uniformly have upheld it against constitutional attack, and so it would have been futile for petitioner to again present this constitutional claim there. However, a reading of the Court of Appeals' cases cited by petitioner indicates that the constitutionality of the contempt statute was neither presented to nor considered by the state's highest court.[23] It is true that a State

---

**16.** *See* People's Affirmation in Opposition to the Defendant's Omnibus Pretrial Motions ¶¶ 11 & 20; Defendant's Reply Memorandum, N.Y. Supreme Court at 49.

**17.** The conviction was reversed on grounds unrelated to any of the issues presented in this proceeding. *People v. Paperno*, 77 A.D.2d 137, 140, 432 N.Y.S.2d 499 (1980) (per curiam) (appeal pending in the N.Y. Court of Appeals).

**18.** *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954).

**19.** *Thornhill v. Alabama*, 310 U.S. 88, 97–98, 60 S.Ct. 736, 741–42, 84 L.Ed. 1093 (1940); *Herndon v. Lowry*, 301 U.S. 242, 261–64, 57 S.Ct. 732, 740–42, 81 L.Ed. 1066 (1937).

**20.** N.Y. Criminal Procedure Law § 440.10.

**21.** *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Twitty v. Smith*, 614 F.2d 325 (2d Cir. 1979); *Johnson v. Metz*, 609 F.2d 1052 (2d Cir. 1979).

**22.** *Johnson v. Metz*, 609 F.2d 1052, 1056 (2d Cir. 1979).

**23.** *People v. Rappaport*, 47 N.Y.2d 308, 310, 418 N.Y.S.2d 306, 391 N.E.2d 1284 (1979) ("[t]he question is whether a Grand Jury witness who has been granted immunity and warned concerning evasive contempt must later be readvised or 'contemporaneously' warned by the Grand Jury, the prosecutor or the court that the answers he is giving are evasive and thus may constitute criminal contempt"); *People v. Schenkman*, 46 N.Y.2d 232, 237, 413 N.Y.S.2d 284, 385 N.E.2d 1214 (1978) (whether hopelessly contradictory responses or inability to recall constitutes criminal contempt under the statute is a jury question; "the jury may conclude that the testimony is an answer in form only, tantamount to no answer at all"); *People v. Martin*, 42 N.Y.2d 882, 883, 397 N.Y.S.2d 794, 366 N.E.2d 881 (1977) (mem.) ("while it was error for the trial court to exclude proof relative to defendant's intent and state of mind at the time he was interrogated before the Grand Jury, the trial court may, in its discretion, limit repetitious or clearly irrelevant testi-

Supreme Court Justice sitting at a trial term has upheld the constitutionality of the statute,[24] but absent a ruling by the state's highest court, petitioner's failure to present the issue there bars federal habeas corpus relief.[25]

In any event, the claim of petitioner that as applied to him the statute is unconstitutional or vague is patently frivolous. On the occasion of each appearance before the grand jury he was meticulously advised that although he received immunity automatically, he may still be prosecuted for the crimes of perjury and criminal contempt, should he commit those crimes. He was specifically told that the crime of criminal contempt may be committed by an immunized witness who categorically refuses to answer a proper and legal question or by giving answers that are so evasive, so equivocal, so conspicuously unbelievable as to be answers in form only and that such conduct was equivalent to a willful refusal to answer. An example of evasive contempt was specifically called to his attention. Not only was the statute read and explained to him, but he testified that he had discussed it with his lawyer.[26]

Thus, after being advised of his rights, his status and the scope and nature of the grand jury, and after consulting with his lawyer, petitioner stated that he fully understood these matters and the consequences of a contumacious or evasive answer. In the light of what may be termed an excess of advice as to his rights and the nature of evasive answers, the claim that the statute is unconstitutional as applied to him is sheer rhetoric. This claim, too, is dismissed.

The petition for a writ of habeas corpus is denied.

The stay of execution of the sentence heretofore granted by this Court pending this ruling on petitioner's application is vacated.

So ordered.

mony"); *People v. Ianniello,* 36 N.Y.2d 137, 140, 365 N.Y.S.2d 821, 325 N.E.2d 146 (1975) (only issue "whether the legality and propriety of questions put to defendant as a Grand Jury witness was a question of fact to be submitted as such in the court's charge to the jury").

24. *People v. Cianciola,* 86 Misc.2d 976, 383 N.Y.S.2d 159 (1976).

25. *See, e. g., Sarzen v. Gaughan,* 489 F.2d 1076, 1082 (1st Cir. 1973) ("when the *highest state court* has addressed itself to the issue raised ... the exhaustion doctrine does not require a petitioner to present his claim in state court") (emphasis added); *Stubbs v. Smith,* 533 F.2d 64, 68–69 (2d Cir. 1976); *Reiff v. Department of Probation,* 474 F.Supp. 276 (E.D.N.Y.1979).

26. Appellant's Appendix, Court of Appeals A42–48.