**Walter NEUMANN, Petitioner,**

v.

**PEOPLE OF the State of NEW YORK, Respondent.**

**No. 81 Civ. 4531–CLB.**

United States District Court,
S. D. New York.

Nov. 24, 1981.

Roger Bennet Adler, New York City, for petitioner.

Robert M. Morgenthau, Dist. Atty., New York County, New York City, for respondent; Robert M. Pitler and Joyce Adolfsen, Asst. Dist. Attys., New York City, of counsel.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

Walter Neumann, a state prisoner, filed his petition for a writ of habeas corpus on July 22, 1981 pursuant to 28 U.S.C. § 2254. On September 23, 1981, the District Attorney of New York County filed an answer. The transcripts of the relevant state court proceedings were sent to the Court on November 10, 1981.

After a jury trial, petitioner was convicted of two counts of perjury in the first degree. On April 22, 1977 petitioner was sentenced to two concurrent five year terms

of probation. Petitioner's conviction was affirmed by the Appellate Division on May 8, 1979, *People v. Neumann,* 70 A.D.2d 524, 416 N.Y.S.2d 11 (1st Dept. 1979), and by the Court of Appeals on December 22, 1980, *People v. Neumann,* 51 N.Y.2d 658, 435 N.Y.S.2d 956, 417 N.E.2d 69 (1980).

Petitioner raises three grounds in support of his application for a writ of habeas corpus. First, petitioner contends that the prosecution failed to prove that he was guilty beyond a reasonable doubt because his statements were literally true and therefore not perjurious. Second, petitioner contends that he was denied due process of law in that the investigation which lead to the perjured statement was a "perjury trap" designed to trick petitioner into making a false statement. Third, petitioner contends that the trial judge's instructions to the jury were improper insofar as they created a presumption that one intends the natural and probable consequences of his own acts.

■ As to petitioner's first claim, a federal court will grant a writ of habeas corpus to a state prisoner challenging his conviction on the ground of insufficient evidence only if the court, after viewing the evidence adduced at trial in the light most favorable to the prosecution, concludes that no rational trier of fact could have found the petitioner guilty beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Applying this standard to the instant case, this Court holds, based on the entire trial record, that there was sufficient evidence at trial to permit a factfinder to conclude that the petitioner had the requisite intent to commit perjury and in fact committed perjury.

The facts stated below were adduced at trial. In early 1976 the New York City Department of Investigation (the "Department") began an investigation of the City-owned Prospect Park Zoo in Brooklyn. The Department had received reports from the Parks Department which administers the zoo, that animals had been abused and killed by City employees. One report alleged that a monkey had been scalded to death. Several employees of the zoo were asked to appear at the office of the Department, where they were questioned under oath by Thomas H. Roche, Assistant Commissioner and Counsel to the Department.

Before calling petitioner, who was the Acting Supervisor of the Zoo, to testify, Roche obtained sworn statements from several of petitioner's subordinates at the Zoo. A menagerie keeper at the Zoo, Devillo Holmes, had sworn that he and another Zoo employee had accompanied petitioner to the "elephant house" where all three men shot at pigeons with an air-powered pellet gun for sport. Ejnar Johnson, a porter at the Zoo, also reported that he had observed the petitioner shooting at pigeons in the elephant house. Samuel Borrelli swore that he had seen petitioner shoot a .22 caliber rifle at rats in the lion house. Devillo Holmes corroborated Borrelli.

Having obtained these sworn statements, Roche called petitioner to testify. Petitioner was placed under oath by Roche and petitioner's testimony was taken down by a stenographer. Roche explained that neither Neumann's testimony nor evidence obtained as a result of that testimony could be used in a criminal proceeding against him, although it could be used in an administrative hearing. Roche also explained to Neumann twice that if he lied during his testimony or made deceptive statements he would be subject to criminal prosecution for perjury or contempt. Petitioner acknowledged that he understood these warnings. Petitioner was also informed of his right to have counsel at his testimony and that if he could not afford an attorney, one would be appointed for him. Petitioner stated that he did not want an attorney.

During his testimony, petitioner was asked whether there were wild birds or animals within the Zoo and petitioner stated that there were a great number, mainly starlings and pigeons. When asked whether attempts were made to drive the birds out of the Zoo, petitioner stated that the only means used were that Zoo employees would make loud noises or shoot water at the birds through a hose. The following colloquy then ensued:

"Q Has there been any other means used to your knowledge?

A Not to my knowledge.

&ast; &ast; &ast; &ast; &ast; &ast;

Q Have you ever used a *firearm* to disperse the pigeons?

A I have not.

Q Do you own any *firearms*?

A I do.

Q Could you tell me what kinds they are?

A 306, very powerful gun much too big for pigeons.

Q Do you own any other *firearms*?

A Well, I have some in my summer home in Maine, but they are not registered. Also I have a New York City pistol permit.

Q For what kinds of *weapons*?

&ast; &ast; &ast; &ast; &ast; &ast;

A .357 Magnum.

Q Do you own any other *weapons* at home in New York?

A I have a 12 gauge shotgun.

Q Have you ever registered any *weapons* with the City of New York?

A All my *weapons* are registered.

&ast; &ast; &ast; &ast; &ast; &ast;

Q Are there any others [,] those that you haven't mentioned?

A No.

Q You own a *.22*?

A I do not.

Q Do you own a *pellet gun*?

A I do not.

Q Does the zoo own a *pellet gun*?

A Not to my knowledge.

&ast; &ast; &ast; &ast; &ast; &ast;

Q And you say you've never discharged a *weapon or firearm* at any of the pigeons or birds at the zoo?

A Correct.

Q Have you ever seen anybody do that?

A No." (Emphasis supplied).

Petitioner was then asked if the Zoo had a problem with rats or mice. He said yes and stated that they killed them "by stepping on them, hitting with clubs, anyway you could get them". Petitioner was asked about the scalding of the monkey known as "Joe Bananas," and said he suspected that one of his men had done it but he did not know who. Roche then returned to Neumann's earlier statement that he never shot pigeons in the Zoo.

"Q I'd like to go back to one other area we discussed and that is the pigeons. Have you ever, at any time, discharged a *firearm* at any of the pigeons?

A No.

Q Has any employees of the zoo?

A Not to my knowledge.

Q Did you ever discharge a *firearm* anywhere within the geographical confines of the zoo?

A No.

Q Are you certain of that?

A I don't ever recall doing it. Unless —well, the *tranquilizer gun*?

Q Other than the tranquilizer gun?

A .No.

Q And you're absolutely certain you never discharged a *firearm* in the Elephant House at the pigeons?

A Certain.

Q Have you owned ɑ *.22* in the last year?

A No.

Q Have you used a *.22* in the last year?

A I spend a great deal of time in Pennsylvania where I use a great many *firearms* and I probably have.

&ast; &ast; &ast; &ast; &ast; &ast;

Q Have you used a *pellet gun* in the last year?

A I don't recall using one in the last— many many years before that.

&ast; &ast; &ast; &ast; &ast; &ast;

Q Have you never seen any dead pigeons in the zoo killed by bullets?

A Not that I know." (Emphasis supplied).

When petitioner's testimony ended and the stenographer left the room, Roche told petitioner that he believed petitioner had not told the truth in his testimony. Roche reminded petitioner of the possible consequences of lying under oath and offered him the opportunity to recant and change his testimony without penalty if done before leaving the Department's offices. Petitioner indicated that he did not wish to change his testimony.

Petitioner's indictment contains two counts. The first charged that petitioner "swore falsely that he never discharged a firearm at any of the pigeons or birds at the zoo." The second charged that petitioner swore "falsely that he never discharged a firearm within the geographical confines of the zoo."

Holmes, Johnson and Borrelli testified at trial concerning the defendant's shooting an air-powered pellet gun at pigeons in the elephant house and firing a .22 caliber rifle at rats in the lion house. The trial judge submitted both counts to the jury with instructions that they must determine what petitioner meant when he·denied discharging a firearm in his testimony before Roche. The jury found petitioner guilty on both counts and the Appellate Division and the Court of Appeals both affirmed.

Petitioner argues that his responses to Roche's questions were literally true because under the Penal Law definition a "firearm" is "any pistol, revolver, sawed-off shotgun or other firearm of a size which may be concealed upon the person." New York P.L. § 265.00(3). Petitioner claims that this definition does not include either a .22 caliber rifle or an air-powered pellet gun. He claims that a .22 caliber rifle would come under the separate statutory definition of a "rifle" which means "a weapon designed . . . and intended to be fired from the shoulder . . . ." New York P.L. § 265.00(11). He further claims that the statutory definition of a firearm does not apply to an air-powered pellet gun because a "firearm" must be an instrument from which a shot is discharged by the force of gunpowder or another explosive.

*People v. Schmidt*, 221 App.Div. 77, 222 N.Y.S. 647 (1st Dept. 1927). Petitioner claims that since Roche's questions related to the use of a "firearm," petitioner had answered them correctly.

■ In assessing petitioner's contentions, it must be recognized that, "[a] defense to a charge of perjury may not be established by isolating a statement [or a single word] from context, giving it in this manner a meaning entirely different from that which it has when the testimony is considered as a whole. . . . . If, in the natural meaning in which words were used they were materially untrue, perjury was established." *United States v. Bonacorsa*, 528 F.2d 1218, 1221 (2d Cir. 1976), *cert. denied*, 426 U.S. 935, 96 S.Ct. 2647, 49 L.Ed.2d 386 (1976). See *People v. Neumann*, 51 N.Y.2d at 668, 435 N.Y. S.2d 956, 417 N.E.2d 69.

■ As the state courts consistently held, there was sufficient evidence for the jury to find that both Roche and petitioner used the term "firearm" in an ordinary, non-technical and non-statutory sense, a sense in which pellet guns and .22 caliber rifles are clearly "firearms." See, *e. g., People v. Neumann*, 51 N.Y.2d at 668, 435 N.Y.S.2d 956, 417 N.E.2d 69. Petitioner knew this, because when asked if he owned any "firearms," petitioner testified that he owned a 30.6 caliber rifle. Petitioner was then asked if he owned any other "weapons" and he answered to the effect that he owned only a 12-gauge shotgun. Petitioner was later asked if he had used a .22 caliber rifle within the past year, and he responded that he used a "great many firearms" and that he probably had used a .22 within the previous year.

It is therefore clear that both petitioner and Roche used the terms "firearm" and "weapon" interchangeably, according to their common meaning in the speech of people, and not in a technical or statutory sense.

Furthermore, the Court of Appeals held that it was irrelevant that petitioner did not discharge a "firearm" in the technical sense specified in New York P.L. § 265. 51

N.Y.2d at 665, 435 N.Y.S.2d 956, 417 N.E.2d 69. This section explicitly applies only to the sections in Article 265 governing possessory firearm offenses, and to Article 400 regulating the licensing of firearms. None of the situations contemplated by that statute is present here. *People v. Neumann*, 51 N.Y.2d at 665, 435 N.Y.S.2d 956, 417 N.E.2d 69.

Based on these facts, a rational factfinder could infer beyond a reasonable doubt that petitioner was guilty of perjury. Petitioner is not entitled to a writ of habeas corpus merely because his conviction is based upon possibly conflicting interpretations of the evidence and testimony. As long as any competent evidence went to the factfinders from which they could infer guilt beyond a reasonable doubt, the conviction will stand. See *Jackson v. Virginia, supra; United States v. Bombard*, 423 F.Supp. 1245 (S.D. N.Y.1976). Accordingly, petitioner has not satisfied the *Jackson* standard.

■ Petitioner's second contention is that he was denied due process of law because Roche's investigation was a "perjury trap" designed only to trick petitioner into making a false statement. This claim is frivolous. A prosecutor is not precluded from taking cumulative testimony, and a grand jury or a Commissioner having equivalent investigatory powers, is free to ask questions to which it already knows the answer. Where an investigation has ·"substantive investigative goals," the questions asked were material, and where the witness had a sufficient opportunity to refresh his recollection, a "perjury trap" is not present. *People v. Tyler*, 46 N.Y.2d 251, 413 N.Y.S.2d 295, 385 N.E.2d 1224 (1978). It is not necessary to confront a witness with allegations before questioning, as long as the questions specifically refer to memorable events. *United States v. Mandujano*, 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976); *People v. Pomerantz*, 46 N.Y.2d 240, 413 N.Y.S.2d 288, 385 N.E.2d 1218 (1978). The examiner's repeated and pointed questioning "provided ample clues to stimulate defendant's recollection." *People v. Pomerantz*, 46 N.Y.2d at 249, 413 N.Y.S.2d 288, 385 N.E.2d 1218. See *People v. Schenkman*, 46 N.Y.2d 232, 236, 238, 413 N.Y.S.2d 284, 385 N.E.2d 1214 (1978). Petitioner was given ample warning of the possibility and repercussions of his making false statements. He was also given the opportunity to recant his testimony. In any event, petitioner failed to object at trial or raise this issue of alleged abuse prior to verdict.

■ Under New York law, in order to preserve a question of law for appellate review there must be an objection or exception at the time of trial. New York C.P.L. § 470.05(2). "As a general rule points which were not raised at trial may not be considered for the first time on appeal . . . ." *People v. Thomas*, 50 N.Y.2d 467, 471, 429 N.Y.S.2d 584, 407 N.E.2d 430 (1980). Petitioner cannot, on appeal, for the first time raise the claim that his testimony before Roche was inadmissible at trial because of some claim of prosecutorial misconduct. His failure to raise this claim at trial by objection or by a motion to suppress has waived it. *People v. Pereira*, 26 N.Y.2d 265, 268, 309 N.Y.S.2d 901, 258 N.E.2d 194 (1970). It is therefore clear that as a matter of state law, petitioner has waived his right to challenge this claim of error.

■ Having waived this claim in state court, petitioner is precluded from raising this issue in a federal habeas corpus proceeding. Review here of the claim is "barred on habeas, as on direct appeal, absent a showing of actual prejudice resulting from the alleged constitutional violation." *Wainwright v. Sykes*, 433 U.S. 72, 84, 97 S.Ct. 2497, 2505, 53 L.Ed.2d 594 (1977).

Petitioner falls squarely within the terms of *Wainwright*. Petitioner did not object to the introduction of his testimony before Roche at trial, nor did he seek suppression of this evidence at or prior to trial. Nor does petitioner now show any cause or excuse for his failure to object.

■ Petitioner's third contention is that he was denied due process of law as a result of an erroneous instruction to the jury by the trial judge. Here again, petitioner has waived this point by failing to preserve it at

trial with an appropriate objection. This rule has been specifically held to apply to alleged errors in *Sandstrom*-type jury charges as to the presumption of intent. *People v. Williams*, 46 N.Y.2d 1070, 416 N.Y.S.2d 792, 390 N.E.2d 299 (1979). Petitioner attempts to excuse his failure to object by asserting that the decision in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) was handed down several weeks after the judgment of conviction in this case was affirmed by the Appellate Division. However, this attempt fails, since *Sandstrom* did not alter New York law. *People v. Thomas*, 50 N.Y.2d at 472, 429 S.Ct. 584, 407 N.E.2d 430; *Taylor v. Harris*, 640 F.2d 1 (2 Cir. 1981). Also, considering the totality of circumstances of the entire trial and jury charge, the "presumption of intent" charge was harmless error beyond a reasonable doubt.

For the foregoing reasons, the petition for a writ of habeas corpus is denied.

The Clerk shall enter a final judgment.

So Ordered.