■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JESSE ARNETTE, Appellant. — Appeal by defendant from two judgments of the Supreme Court, Queens County (Rosenberger, J.), each rendered March 6, 1981, one of which (with respect to Indictment No. 1318/79), convicted him of criminal contempt in the first degree (two counts) upon a jury verdict, and one of which (with respect to Indictment Nos. 1319/79 and 1321/79) convicted him of rewarding official misconduct in the second degree, upon his plea of guilty, and imposed sentences. Judgment with respect to Indictment No. 1318/79 reversed, on the law, and indictment dismissed. The case is remitted to the Supreme Court, Queens County, for the purpose of entering an order in its discretion pursuant to CPL 160.50. Judgment with respect to Indictment Nos. 1319/79 and 1321/79 reversed, on the law, plea vacated, and the case is remitted to the Supreme

Court, Queens County, for further proceedings. On June 7, 1979, and June 14, 1979 defendant testified before the Grand Jury under a waiver of immunity. It was alleged that, in the summer of 1977, defendant, while serving as superintendent of Long Island Centralized Services Facility of the Department of Correctional Services permitted employees of the department to repair the roof of his home when they were supposed to be performing their duties as employees of the department. Defendant testified that employees of the department did work on his roof, but that, to the best of his knowledge, that work was not performed during regular working hours. When the prosecutor told him that "there is testimony before this Grand Jury from one workman that he worked twenty to twenty-five days on your roof, most of it during the regular work week", defendant said that "for the record, I have not seen any men on my roof twenty, ten or five days or less during a week, during the weekdays". Defendant testified that if workmen from the Long Island Centralized Services Facility worked on his roof on a weekday, they did so without his knowledge, but added the caveat: "I cannot say from one specific day something happened and one did not." After defendant was warned of the possibility of being held in contempt, he was asked "[d]o you have any specific recollection right now of having seen any of these men at your home on any day other than Saturday, that Sunday during the summer of 1977?" Defendant replied, "[n]o, I don't remember. I have no problem with saying yes. I have no problem with saying no. When I say yes, I want to be sure. When I say no I want to be sure. I don't want to have problems." Defendant noted that the workmen had vacation days and personal days, which they could have spent working on his roof. The prosecutor also questioned defendant with respect to a handwritten notation, "$1,500 paid August 20, 1977", which defendant admitted was made by him. According to defendant, as of August 20, 1977, he had paid $750 for labor, and $584 for materials, for a total of only $1,334. When confronted with this discrepancy, defendant denied that he paid $1,500 for labor, and testified that the $1,500 had nothing to do with his arrangement with Frank Dicce, an employee of the Department of Correctional Services, with respect to labor. Defendant said that the $1,500 was "an estimate I would assume of some costs * * * As I look at it today, it would be an overall cost for the shingle job." In Indictment No. 1318/79, the Grand Jury charged defendant with criminal contempt in the first degree, predicated upon his testimony with respect to whether Correctional Services employees worked on his roof during working hours, and criminal contempt in the first degree and perjury in the third degree, predicated upon his testimony with respect to the handwritten notation "$1,500 paid August 20, 1977". At the trial on this indictment, defendant's Grand Jury testimony was read into evidence in its entirety, and the forelady of the Grand Jury testified. Defendant testified in his own behalf, and called several witnesses attesting to his good moral character. The jury rendered a guilty verdict with respect to the two counts of criminal contempt in the first degree, but acquitted defendant of perjury. Thereafter, defendant pleaded guilty to rewarding official misconduct, in the second degree to cover Indictment Nos. 1319/79 and 1321/79 upon the understanding that his sentence would run concurrently with the sentences to be imposed upon his convictions for criminal contempt in the first degree. Defendant's guilt of criminal contempt in the first degree (two counts) was not established. Although " 'false and evasive profession of an inability to recall' and hopelessly contradictory responses repeatedly changed or altered" may constitute criminal contempt (see *People v Schenkman*, 46 NY2d 232, 237), the events or details to be recalled must be "significant and therefore memorable" (see *People v Schenkman, supra*, p 237). Further if defendant gives explicit testimony before the

Grand Jury which "was neither incredible as a matter of law nor patently false * * * and if later shown to be false, could provide a sufficient basis for a perjury charge", failure to unequivocally respond to the same question, asked in a different form, does not constitute criminal contempt (see *People v Renaghan,* 33 NY2d 991, 992). In the instant case, defendant gave explicit testimony, which if later shown to be false, could provide a sufficient basis for a perjury charge. Defendant said that he was unable to recall having seen any of the employees of the Department of Correctional Services at his home on any day other than Saturday or Sunday during the summer of 1977. However, he explained that the employees of the department have vacation days and personal days. Therefore, if, in an isolated instance, an employee of the department worked on his roof on a working day, the incident would be neither significant nor memorable nearly two years later. In light of his testimony that, to the best of his knowledge, the work was not performed during regular working hours, and his unequivocal testimony that "for the record, I have not seen any men on my roof twenty, ten or five days or less during a week, during the weekdays", it is apparent that defendant made a bona fide effort to answer the questions (see *People v Renaghan, supra*). Similarly, defendant's unequivocal testimony with respect to his notation "$1,500 paid August 20, 1977" was either perjurious or not perjurious. Such unequivocal testimony cannot be considered a contumacious refusal to answer questions. Therefore, Indictment No. 1318/79, charging defendant, *inter alia,* with criminal contempt in the first degree (two counts) must be dismissed. Since defendant pleaded guilty to rewarding official misconduct in the second degree, to cover Indictment Nos. 1319/79 and 1321/79, with the express promise that the sentence for that crime would run concurrent to his sentences on Indictment No. 1318/79, the plea must be vacated, and the case remitted to the Supreme Court, Queens County, for further proceedings with respect to Indictment Nos. 1319/79 and 1321/79 (see *People v Clark,* 45 NY2d 432; *People v Griffith,* 80 AD2d 590; cf. *People v Lowrance,* 41 NY2d 303). Lazer, J. P., Mangano, Brown and Niehoff, JJ., concur.